William L. Buus (SBN 180059)
Eric M. Schiffer (SBN 179695)
SCHIFFER & BUUS APC
3070 Bristol Street, Suite 530
Costa Mesa, CA 92626
Tel.:           (949)825-6140
Fax:           (949)825-6141
Email:        wbuus@schifferbuus.com

Attorneys for Plaintiff ATN Holding, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| ATN HOLDING, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUANEX BUILDING PRODUCTS CORPORATION, a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:15-cv-00516<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF<br><br>(Jury Trial Demanded – Class Action) |

Plaintiff ATN HOLDING, INC. (hereinafter "ATN"), individually and on behalf of all others similarly situated, brings this complaint against defendant, QUANEX BUILDING PRODUCTS CORPORATION (hereinafter "QUANEX"), and alleges:

**I.    JURISDICTION AND VENUE**

1.    This is an action pursuant to sections 4(a) and 16 of the Clayton Act, 15 U.S.C. sections 15a and 26, to recover treble damages, prejudgment interest, equitable relief, costs of suit, and reasonable attorney's fees for defendants' violation of Section 7 of the Clayton Act, 15 U.S.C. section 18, and of Section 2 of the Sherman Act, 15 U.S.C. section 2.  This court has subject matter jurisdiction

over this action under Sections 15 and 16 of the Clayton Act, 15 U.S.C. sections 25 and 26, Section 4 of the Sherman Act, 15 U.S.C. section 4, and 28 U.S.C. sections 1331, 1337, 1332(d)(2), 2201, and 2202.

2. Venue in the Central District of California is proper under 15 U.S.C. section 22 and 28 U.S.C. 1391(c) because defendants transact business and/or is found within this District; a substantial part of the acts, events or omissions giving rise to the claim occurred in this District; and a substantial part of the interstate trade and commerce involved and affected by the violation of the antitrust laws alleged herein was and is carried out within this District. The acts complained of have had, and will have, substantial anticompetitive effects in this District.

3. Jurisdiction over the defendants comports with the United States Constitution and with 15 U.S.C. sections 15, 22 and 26.

**II.    THE PARTIES**

4. ATN is a corporation organized and existing under the laws of the State of California with its principal place of business located in Mira Loma, California. At all times herein alleged, ATN engaged in the business of manufacturing and/or producing residential windows.

5. Defendant QUANEX is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Houston, Texas. QUANEX manufactures and/or produces flexible window spacers that are used in the assembly and/or manufacture of residential windows. In fact, it is currently the only manufacturer of flexible window spacers used in the assembly and/or manufacture of residential windows in the United States, possessing one hundred percent (100%) of the relevant product and geographical market, as defined herein. Such flexible window spacers are used by small and middle volume window manufacturers to produce insulated windows and by manufacturers of non-regular shaped insulated windows, such as those that are curved rather than edged. The spacers are installed between two planes of glass to

2
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

provide an insulating space between the planes of glass and hold the planes of glass together in a fixed relationship.

### III. TRADE AND COMMERCE

6. ATN's production, distribution and sale of its residential windows, and QUANEX's production, distribution and sale of its flexible window spacers, involve a substantial amount of interstate commerce and the facts and conduct alleged herein affect a substantial amount of interstate commerce.

### IV. THE RELEVANT MARKET

7. The relevant anti-trust product market for purposes of this Complaint is the wholesale and retail market for flexible window spacers used in the manufacture of insulated residential windows. Although other non-flexible window spacers used in the assembly and/or manufacture of insulated residential windows are produced and/or manufactured in the United States by other business entities, such window spacers are not a good substitute for flexible window spacers, the latter of which are indisputably superior in quality and function and are almost always used in high-end residential construction or renovation. Thus, the demand between the non-flexible window spacers and flexible window spacers is substantially inelastic.

8. The relevant anti-trust geographic market is nationwide. Accordingly, the 50 states of the United States and its districts and territories comprise the relevant geographic market definition of the wholesale and retail market for flexible window spacers used in the assembly and/or manufacture of residential windows.

### V. QUANEX'S MONOPOLY POWER

9. Before December 31, 2003, the relevant market was occupied by two business entities: Truseal Technologies, Inc. and Edgetech I.G., which were both flexible window spacer producers and/or manufacturers. On or about December 31, 2003, QUANEX acquired Truseal Technologies, Inc. and, on or about April 1,

2011, QUANEX attained and occupied one hundred percent (100%) of the relevant market by acquiring Edgetech I.G. Along with those acquisitions, QUANEX acquired any and all patent rights that Truseal possessed with respect to its flexible window spacers, and has been vigorously enforcing those patent rights by way of cease and desist letters and legal actions.

10. Significant barriers to enter the relevant market exists, particularly as a result of QUANEX's attainment of one hundred percent (100%) of such market. First of all, QUANEX's patent rights and its assertion of them serve as a substantial barrier to entry. Secondly, the cost to acquire the machinery and equipment necessary to manufacture such flexible window spacers is quite high. Finally, the cost for window manufacturers using flexible window spacers to switch from one window spacer to another is also quite high and, therefore, many of those manufacturers would rather not incur the time, money and effort to switch from one flexible window spacer to another.

### VI. QUANEX'S PRICE INCREASE

11. After acquiring one hundred percent of the relevant market, QUANEX substantially increased the effective price of its flexible window spacers by more than twenty percent (20%). QUANEX was able to do this because it possessed one hundred percent (100%) of the relevant market, because of the inadequacy of any potential product substitutes, and because of the substantial barriers to enter the relevant market.

### VII. WILLFUL MAINTENANCE OF MONOPOLY POWER

12. QUANEX has maintained its monopoly power by refusing to sell its flexible window spacers to any residential window manufacturer that also uses non-QUANEX window spacers, thus encouraging such window manufacturers to carry only QUANEX window spacers. In fact, ATN was a regular purchaser of QUANEX flexible window spacers, but QUANEX later refused to deal with ATN because it used non-QUANEX window spacers in the production and/or

manufacture of insulated residential windows.

## VIII. HARM TO COMPETITION

13.  QUANEX's willful acquisition and maintenance of its monopoly power in the relevant market has harmed competition. It acquired one hundred percent (100%) of the relevant market, it increased its prices, set up and/or exploiting any barriers for a competitor to enter the market, and has refused to deal with window manufacturers that use non-QUANEX window spacers. In short, QUANEX has done exactly those things against which the anti-trust laws were meant to protect: reduced output and increased prices of flexible window spacers. The harm to competition caused by defendants' anticompetitive conduct harms window manufacturers and the ultimate consumer by increasing the price of the product above a reasonably competitive level and stifling innovation and diversity in the relevant market.

## IX. ANTITRUST INJURY

14.  ATN suffered injury in fact and antitrust injury directly and proximately caused by defendants' conduct and seeks treble damages for its injury, certification of a proposed class of manufacturers of insulated residential windows for the adjudication of the issue of defendants' liability to the members of the class for their individual damages, injunctive relief for itself and for the class, appointment of a class representative and an award of attorney's fees and costs of this action.

15.  Defendants' conduct has caused ATN injury in its business or property that flows directly from that which makes defendants' acts unlawful and is of the type the antitrust laws were intended to prevent. ATN's injury reflects the anticompetitive effect of the violation and of the anticompetitive acts made possible by the violation.

16.  Other similarly-situated members of the putative class were also injured in their business or property by being deprived of commercially reasonable

access to flexible window spacers and have suffered injury to directly and proximately caused by defendants' anticompetitive conduct.  The injury to the class is the type of harm the antitrust laws were intended to prevent and flows from that which makes defendant's acts unlawful.  The injury suffered by the members of the proposed class reflects the anticompetitive effect of the violation and of the anticompetitive acts made possible by defendant's violation.

### X.   CLASS ALLEGATIONS

17.   ATN, in addition to seeking for itself damages and trebling of damages where authorized by law, also brings this action on the issue of liability on behalf of all other similarly situated residential insulated window producers and manufacturers injured by the conduct alleged herein, for injunctive and declaratory relief to remedy and prohibit the defendants' conduct from continuing in the future, and for an award of attorneys' fees and other costs of this litigation.

18.   Questions of law and fact likely to vary significantly among the class relate solely to the magnitude of money damages to which each class member is entitled so that common questions of law and fact will predominate in the adjudication of liability.

19.   ATN is representative of a class governed by Federal Rules of Civil Procedure 23(a), as defined in the following paragraph.  It is appropriate under the circumstances of this case to bring and maintain this action as a class action with respect to the issue of the defendants' liability to the class members.  Accordingly, this action is brought and maintained as an issue class pursuant to Rule 23(c)(4). Upon a favorable determination of liability in favor of the proposed class, it is anticipated that separate trials on the amount of damages will be required for each eligible class members.  Certification of the requested issue class would greatly simplify and truncate these subsequent trials on damages, yielding significant judicial economy and cost savings compared to an alternative by which each member of the putative class is required to try and re-try the issue of liability

before the magnitude of damages to any individual residential insulated window producer and manufacturer may be reached.

20.     The class represented by ATN is comprised of all residential insulated window producers and manufacturers who have purchased flexible window spacers from QUANEX during the past four years.

21.     The class represented by ATN is so numerous and geographically so widely dispersed that joinder of all members is impracticable.  There are questions of law and fact common to the class, ATN's claims are typical of the claims of the class it represents, and its theory of liability is identical to all other members of the putative class.  ATN is represented by counsel knowledgeable and experienced in business and unfair competition litigation and in prosecuting of antitrust class action litigation and will fairly and adequately protect the interests of the issue class.

22.     Defendants' relationships with the members of the class and their anticompetitive conduct are substantially uniform with respect to each member of the class.  The antitrust violations alleged herein affect each member in substantially the same manner.  Except as to matters of individual damages and other variations which do not materially affect this action, the relationship between Defendants and the members of the class is identical.  The anticompetitive conduct of defendants alleged herein has imposed the same kind of antitrust injury on the members of the class.

23.     The prosecution of separate actions by individual members of the class on the issue of liability would create risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class, or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

protect their interests.

24. The parties opposing the class have acted or refused to act on grounds that apply generally to the class and final injunctive or declaratory relief is appropriate respecting the class as a whole.

25. Common questions or law and fact on the issue of liability predominate over questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating defendants' liability in this controversy. There are no foreseeable difficulties managing this action as an issue class action and it is desirable to concentrate the litigation regarding the issue of liability in this forum.

26. ATN has retained the counsel undersigned to represent it individually and as representative of the putative class and is obligated to pay a reasonable fee for said services.

## COUNT ONE

## UNLAWFUL ACQUISITION: CLAYTON ACT SECTION 7

27. ATN incorporates by reference into this paragraph each and every allegation contained in all preceding paragraphs.

28. Defendants' unlawful acquisition of Truseal Technologies, Inc and then EdgeTech I.G. were asset acquisitions within the meaning of section 7 of the Clayton Act, 15 U.S.C. section 18. The effect of this acquisition has been to potentially or actually lessen competition significantly and/or acquire and/or maintain a monopoly in the relevant market in violation of section 7 of the Clayton Act, 15 U.S.C. section 18.

29. By reason of defendants' violation of section 7 of the Clayton Act, ATN and all others similarly situated have been injured in their business by paying unreasonably high prices for the subject flexible window spacers from QUANEX and by incurring additional costs and expenses resulting from QUANEX's refusal to deal with ATN and all others similarly situated for their use of non-QUANEX

window spacers in the production and/or manufacture of residential insulated windows.

## COUNT TWO

## MONOPOLIZATION AND/OR ATTEMPTED MONOPOLIZATION: SHERMAN ACT SECTION 2

30. ATN incorporates by reference into this paragraph each and every allegation contained in all preceding paragraphs.

31. Through defendants' anticompetitive scheme to monopolize the relevant market, including but not limited to their willful acquisitions of Truseal Technologies, Inc. and then EdgeTech I.G., their willful maintenance of the resulting monopolistic power, their refusals to deal with those who use non-QUANEX window spacers, and their vigorous enforcement of its intellectual property rights, among other things, defendants have gained or increased its monopoly in the relevant market.

32. By such acts, practices and conduct which continue today, defendants have engaged in a course of conduct that amounts to willful monopolization and a willful and unlawful exercise of monopoly power. At minimum, they have engaged in such course of conduct with the specific intent of monopolizing the relevant market and created a dangerous possibility that defendants will succeed in doing so, if they haven't already done so.

33. Defendants' conduct has had a direct adverse effect on competition, as evidenced by their refusals to deal and increase in prices beyond competitive levels.

34. Defendants' conduct constitutes monopolization in violation of section 2 of the Sherman Act, 15 U.S.C. section 2.

35. By reason of defendants' violation of section 7 of the Clayton Act, ATN and all others similarly situated have been injured in their business by paying unreasonably high prices for the subject flexible window spacers from QUANEX

and by incurring additional costs and expenses resulting from QUANEX's refusal to deal with ATN and all others similarly situated for their use of non-QUANEX window spacers in the production and/or manufacture of residential insulated windows.

## THIRD COUNT
## UNFAIR COMPETITION: CAL. BUS. & PROF. CODE SECTIONS 17200 et seq.

36. ATN incorporates by reference into this paragraph each and every allegation contained in all preceding paragraphs.

37. The acts and conduct of defendants as alleged above constitute unlawful and/or unfair business acts or practices as defined by sections 17200 *et seq.* of the California Business and Professions Code.

38. Defendants' acts of unlawful and/or unfair competition have proximately caused injury to ATN's business and the business of all other businesses similarly situated, through the loss of past, present, and future profits, by paying unreasonably high prices for the subject flexible window spacers from QUANEX and by incurring additional costs and expenses resulting from QUANEX's refusal to deal with ATN and all others similarly situated for their use of non-QUANEX window spacers in the production and/or manufacture of residential insulated windows. Defendants' acts of unlawful and/or unfair competition have caused harm to competition, to consumers, to the consumers' customers.

39. In engaging in the conduct alleged in this complaint, defendants have acted in a manner that is immoral, unethical, oppressive and/or unscrupulous.

40. The acts and conduct of defendants as alleged herein violate section 7 of the Clayton Act, 15 U.S.C. section 18, and section 2 of the Sherman Act, 15 U.S.C. section 2, and as a result they constitute unlawful business practices in violation of section 17200 of the California Business and Professions Code.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

41. Through its anticompetitive scheme to monopolize the relevant market, including but not limited to the acquisition of Truseal Technologies, Inc. and then EdgeTech I.G., and their refusals to deal with those who use non-QUANEX window spacers and vigorous enforcement of its intellectual property rights, defendants have brought about or attempted to bring about a substantial lessening of competition.

42. Defendants' acts and conduct amount to unfair competition practices. They are against public policy because of their dangerous tendency unduly to hinder competition, and they lessen fair competition through restrictive and/or otherwise oppressive conduct. These acts and conduct constitute unfair competition in violation of section 17200 of the California Business and Professions Code.

## **PRAYER FOR RELIEF**

WHEREFORE, ATN and all those similarly situated pray for judgment as follows:

1. Judgment against defendants awarding damages for violations of section 7 of the Clayton Act and section 2 of the Sherman Act;

2. A declaration that this action may be maintained as an issue class action to determine the issue of defendants' liability for the offense alleged herein pursuant to Rules 23(b)(1), (2), (3), and (4) of the Federal Rules of Civil Procedure and that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to all members of the plaintiff class;

3. Such declaratory and injunctive relief as the court determines to be appropriate to redress conduct found to be unlawful under the antitrust laws, including but not limited to an order of divestiture, an order dividing the defendants' assets, and/or an order compelling defendants to license its patents on a reasonable royalty basis;

4. An award trebling the damages proved by ATN;

5. An order that members of the proposed class may file an action to recover damages based on the defendant's liability for their unlawful conduct;

6. An award of prejudgment and postjudgment interest and any other interest permitted by law;

7. An award of costs of suit, including reasonable attorney's fees as provided by law; and,

8. All other and further relief as the Court determines to be just and proper.

DATED:   3/17/2015            SCHIFFER & BUUS APC


       /s/ William L. Buus            .
By: William L. Buus
Attorneys for Plaintiff ATN Holding, Inc.


ATN and all of those parties similarly situated hereby demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable as of right by a jury.

DATED:   3/17/2015            SCHIFFER & BUUS APC


       /s/ William L. Buus            .
By: William L. Buus
Attorneys for Plaintiff ATN Holding, Inc.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF